BURKS, J.
The appellants, March, Price & Co. filed their bill in the circuit court of Danville against the appellees, A. B. Chambers and John G. Raney, to subject a house and lot in the possession of Raney to satisfy the lien of a judgment recovered by the appellants against said Chambers. Raney and Chambers filed separate answers to the bill, and no depositions being taken on either side, the cause was heard on the bill, answers and exhibits, without replications to the answers, and a decree was entered dismissing the bill at the costs of the complainants. From this decree an appeal was allowed the complainants by one of the judges of this court.
The answers, whether responsive or not, there being no replications thereto, must be taken as true. 2 Rob. Prac. (old ed.), 312, and cases there cited. This is most favorable for the appellees; for, if replications had been filed, many of the essential statements in the answer being affirmative in their character, the case, without proof in support of these statements, must of necessity have been with the appellants.
The case made by the bill, answers and exhibits is, in substance, the following: March', Price & Co. recovered their judgment in the corporation court of Danville, against the appellee, Chambers, on the 1st day of July, 1872, and the judgment was docketed in said court on the 11th day of March, 1873. 'The lot, which is claimed to be subject to the lien of the judgment, lies within the corporate limits of the town of Danville. It was purchased by Chambers from one S. H. Turner, and conveyed to the former by deed of Turner and wife, dated, executed and duly recorded in the *year 1860. On or about the 1st day . of January, 1866, under an agreement in writing, entered into between Chambers and William T. Raney, the former sold the lot to the latter, and on the 24th day of January. 1866, by deed of that date, conveyed the same to him, reserving on the face of the deed a lien on the lot. for the payment of the purchase money. On the 15th day of *109 August, 1866, William T. Raney having paid all the purchase money owing to Chambers, conveyed the lot to the appellee, John G. Raney, by mortgage deed to secure the payment of $4,000, with interest, owing by the said William T. Raney to the appellee. The mortgage was duly admitted to record in the corporation court of Danville, on the 24th day of August, 1866.
On the 8th day of April, 1868, William T. Raney was, on his own petition, adjudged bankrupt by the district court of the United States for the district of Virginia. One Joseph A. Hobson was appointed assignee in bankruptcy of his estate, and on the 29th day oí May, 1868, the register made the usual deed of conveyance of the bankrupt’s estate to the assignee. On the 22d day of September, 1868, on the joint application of the assignee and of the said John G. Raney, as a lien creditor of the bankrupt, the court of bankruptcy ordered the sale of the lot aforesaid, which had been surrendered by the bankrupt in his petition as a part of his estate. The assignee made sale of the lot under the order, and the said John G. Raney became the purchaser. The sale was reported, and by order of the 18th November, 1868, was confirmed, and the assignee directed to convey the lot to the purchaser by proper deed, it being recited that the terms of sale had been complied with and the whole of the purchase money paid. In pursuance of this order, the assignee, by deed dated and recorded the same day (18th November, 1868), conveyed the lot to the purchaser, the said John G. Raney, who ^thereupon took possession of the lot under said deed and had such possession at the date of the judgment of the appellants and continuously since.
The written contract for sale between Chambers and William T. Raney, was never recorded, nor was the deed of conveyance from the former to the latter recorded until the 18th day of September, 1873, more than twelve months after the appellants recovered their judgment against Chambers, and six months after the judgment was docketed.
As the answer of the appellee, John G. Raney, avers that the appellants had actual notice of the deed of conveyance from Chambers to William T. Raney, although the deed was not recorded when the judgment was recovered, such notice, in the absence of any replication to the answer, must be accepted as a fact, not deemed by me material, however, in the decision of the matters arising on this appeal.
Upon this case, made by the answers taken as true and exhibits filed, the defence of the appellee, John G. Raney, is thus summarized in the conclusion of his answer: “Respondent relying upon the written contract between Chambers and William T. Raney, and the full payment for said land; afterwards the deed from Chambers to William T. Raney, which put in said Raney both the legal and equitable title to said property, and divested said Chambers of the same; upon the deed of mortgage from W. T. Raney to him, his purchase and payment for said property, and the several deeds, &c., to him, and the recordation thereof fully justifies this respondent in denying all the allegations of complainants’ bill tending to establish a lien against said property, and he does hereby expressly deny them, and upon all matters of allegations not depending upon exhibits of records made and furnished, calls for strict proof.”
The case thus presented by the record is essentially ^different from Floyd, trustee, v. Harding & als., 28 Gratt. 401. In that case, the contract for sale was in parol, and had been so far performed, that the purchaser, before the date of the judgment against his vendor, had become invested with a perfect equitable title, and it was held that although the deed of conveyance was void under our registry laws, because so expressly provided, yet those laws do not apply to a parol contract for the sale of land, and that where the purchaser under such contract has acquired a valid, equitable title to the land, it is not subject to the lien of a judgment subsequently acquired against his vendor.
In the case before us, the contract for sale was in writing, and such a contract is literally within the terms of our recording acts, as fully so as a deed of conveyance, and each is declared to be' “void as to creditors and subsequent purchasers for valuable consideration without notice, until and except from the time that it is duly admitted to record in the county or corporation wherein the property embraced in such contract or deed may be.” See Code of 1873, ch. 114, §§ 4, 5, 6, 7.
The executory contract for the sale, no less than the deed of conveyance, being void as to the creditor, whether he be a creditor with or without notice, the lien of the judgment is paramount to the title of any alienee claiming under such void contract and conveyance.
I regard this proposition as fully established by the case of Eidson v. Huff & al. (argued before I came to the bench, and therefore I did not sit in the case), 29 Gratt. 338. In that case, the purchaser had a title bond from her vendor, went into possession under it, paid all the purchase money, and afterwards had a deed of conveyance. The title bond was never recorded, and the deed was not recorded until after judgment was recovered against the vendor. The judgment, although not docketed until after the deed was recorded, was docketed *within twelve months after it was recorded, and therefore operated as a lien from and after its date. It was decided that the title bond and deed were both void under the statute as to the judgment creditor, and that the surety bound with his principal by the judgment, having paid it for his principal, was entitled to stand in the shoes of the creditor and enforce the judgment against the lands in the hands of the alienee of the purchaser from the principal judgment debtor. That case, in its equity, was even stronger for the purchaser and his alienee, than the one now under consideration, for there the purchaser from the judgment debtor went into possession under . her title bond, while in the present case, *110 it does not. appear .that the purchaser ever had possession. It does not appear in either case, that there was ever any other contract than the written contract under which the purchaser claimed. This may be a hard case on the purchaser and his alienee, but, as was said by Judge Staples in the opinion in Eidson v. Huff & al., concurred in by the court: “This court cannot construe away a plain statute to avoid cases of individual hardship. The legislature has thought proper to place all written contracts for the sale of land upon the same footing with deeds of conveyance, so far as they come within the influence of the registration acts, and we have no alternative but to enforce the law as it is written.”
The written contract and the deed from Chambers to William T. Raney being void as to the appellants, creditors of Chambers, all the subsequent alienations are in like manner void as to these creditors. The effect of the statute is that, as to the appellants, Chambers must be regarded as entitled to the Danville lot at the date of their judgment against him, in like manner and to the same extent as if he had never aliened it.-As respects this matter, the mortgagee, assignee and purchaser under the bankruptcy proceedings occupy no higher ground *than William T.
Raney, the bankrupt and first purchaser, does. The assignee took the bankrupt’s title and nothing more, and the purchaser from the assignee took the same title, and both are void as to the judgment of the appellants. There is nothing in the bankrupt law, or in the bankruptcy proceedings, which, in a case like this, assures to the purchaser from the assignee under an order of the bankruptcy court any other or better title than the bankrupt had. The rule caveat emptor applies to such a purchaser as in other judicial sales. The appellants were not parties to the proceedings in bankruptcy for the sale of the bankrupt’s property, and their rights are not impaired or affected thereby.
It appears by the admission of the appellee, John G. Raney, in his answer to the bill, that the rents and profits of the lot will not satisfy the judgment of the appellants in five years. I am of opinion to reverse the decree of the circuit court of Danville and remand the cause, with directions to said court to enter a decree for the sale of the lot to satisfy said judgment, and for further proceedings to final decree in conformity with this opinion.
MONCURE, P., and CHRISTIAN and STAPLES, J’s, concurred in the opinion of BURKS, J.
ANDERSON, J., dissented.
The decree was as follows:
This day came a,gain the parties, by their counsel, and the court having maturely considered' the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with record, that the lot of land, with the buildings and improvements thereon, in the bill of the appellants *mentioned, situate in the town of Danville, and as stated in said bill, “designated on the plan of said town as lot No. 134,” is subject to the lien of the judgment of the appellants in the bill mentioned, and is liable to be subjected to the satisfaction of said judgment, and that the said decree is wholly erroneous. It is therefore decreed and ordered that the said decree be reversed and annulled, and that the appellees pay to the appellants their costs by them about the prosecution of the appeal afqresaid here. And this cause is remanded to Jhe said circuit court of Dan-ville; and as it appears by the admission of the appellee, John G. Raney, in his answer to the bill of the appellants, that the rents and profits of said lot will not satisfy the said judgment in five years, the said circuit court, by proper decree for the purpose, should order the sale of said lot to satisfy said judgment, and otherwise proceed to final decree in the cause in conformity with the opinion and principles herein expressed and declared; which is ordered to be certified to the said circuit court.
Decree reversed.