**UNITED STATES of America, Plaintiff,**

**v.**

**LOMAS MORTGAGE, USA, INC. and Jeffrey W. Foutz, Defendants.**

Civ. A. No. 89–0442(R).

United States District Court,
W.D. Virginia,
Roanoke Division.

Aug. 22, 1990.

---

U.S. Attys. Office, Roanoke, Va., for plaintiff.

Samuel D. Campbell, Pulaski, Va., for defendants.

## MEMORANDUM OPINION

TURK, Chief Judge.

This action is before the Court on the motion of defendant Lomas Mortgage, USA, Inc., for summary judgment. The defendant has filed a brief addressing the issues, the Court has heard oral argument, and the matter is ripe for decision.

The facts of this case are apparently not in question.[1] Poff Construction, Inc., by deed dated September 6, 1972 and recorded on September 15, 1972 in the Deed Book located in the office of the Clerk of the Circuit Court for the County of Pulaski, acquired title to certain land located in Pulaski County. Poff later subdivided this property to create Tyson Hills subdivision. Poff then entered into a construction loan with National Home Acceptance Corporation (defendant's predecessor in interest), whereby National loaned Poff $18,850. for the construction of a house on Lot I of Section II of the subdivision. This loan was accompanied by a promissory note dated February 23, 1977, made by Poff and guaranteed by certain other individuals. This note was secured by a deed of trust dated February 23, 1977 and recorded in the clerk's office on February 24, 1977 at 12:20 p.m. Poff and National subsequently entered into four loan extension agreements.

By general warranty deed dated June 15, 1978, recorded in the clerk's office on September 8, 1978, Poff conveyed the lot to Roy S. and Rhonda B. Chrisley for $24,500. The Chrisleys did not assume National's loan and Poff did not pay the loan off. The Farmers Home Administration provided the Chrisleys with a mortgage loan to make the purchase. The transaction was handled by A. Dow Owens who prepared the deed of conveyance, the FmHA deed of trust, searched the title and closed the transaction.

During his title examination, when adversing Poff in the grantor index, Owens relied on the property description in that

---

1. Defendant has submitted documents and a brief in support of its motion. Although given an opportunity to do so, plaintiff has submitted neither a brief nor any evidence in opposition to the motion.

index to determine if any liens were of record against the lot. Owens noted a deed of trust lien on the lot in favor of Virginia National Bank. This lien was released by payment to Virginia National Bank of part of the sale proceeds. The grantor's index in 1978 showed Poff as the grantor of a deed of trust to John D. Buck, trustee, which was recorded in the Clerk's office on February 24, 1977. This information was correct for National's deed of trust. Under the property description column, however, the index incorrectly described the lot as Lot 3, Section I, rather than Lot I, Section II. The deputy clerk who prepared the index apparently mistakenly recopied the property description for the immediately preceding deed of trust. By relying on the property description column of the grantor index, Owens did not examine National's deed of trust to see that it correctly stated the encumbered property as Lot I, Section II.

At closing, Owens asked N. Thomas Poff if there were any other liens on the lot. Owens has testified by deposition that Poff said that the only lien was that of Virginia National Bank.

Poff apparently conveyed the lot to the Chrisleys without National's knowledge or consent. From 1978 through February, 1989, Poff continued to pay interest and some principal on the loan. Neither National nor its successors in interest, including defendant Lomas, subordinated their deed of trust lien to FmHA's deed of trust.

In 1983, the Chrisleys conveyed the lot to Jeffrey W. Foultz for $36,000. This general warranty deed was recorded in the clerk's office on July 28, 1983. Foutz did not assume Lomas' loan, nor was the loan paid off. Like the Chisleys, Foultz used an FmHA loan to purchase the lot. This transaction was handled by R. Glenwood Lockabill, who prepared the deed of trust, searched the title and closed the transaction. Lockabill only searched the title back in time to September 8, 1978, the date to which Owens had certified title. This transaction was also apparently done without the knowledge of National or its successor in interest Lomas.

In 1989, Poff refused to make any further payments on the loan and filed a Chapter 11 bankruptcy petition on April 14, 1989.

In May of 1989, plaintiff filed a complaint seeking declaratory and injunctive relief against Lomas and Foultz. In its complaint, plaintiff seeks a declaration as to the rights of the parties in the land and an injunction permanently forbidding any foreclosure proceedings by Lomas. The Court granted a preliminary injunction forbidding Lomas from taking legal action to foreclose on the property. This injunction was extended by the Court, and has since lapsed by its own terms. Defendant Lomas subsequently filed this motion for summary judgment.

In its complaint, plaintiff asserts that National's deed of trust, to which Lomas has succeeded to, does not have priority despite its having been recorded prior to any FmHA mortgage. Plaintiff bases this assertion on the fact that the National deed of trust was not discovered in the title search because it was misindexed. Plaintiff asserts that it therefore did not have notice of National's deed of trust and should not be subordinated to it. Plaintiff also asserts that any claim Lomas might have to the property is barred by the doctrines of laches, unclean hands, and estoppel.

In support of its motion for summary judgment, Lomas, while questioning whether National's deed of trust was in fact misindexed, asserts that even if misindexed it still gave constructive notice to plaintiff under Virginia statute. Defendant asserts that National's deed of trust has priority over the FmHA deeds of trust and that no equitable doctrines prevent it from foreclosing on its lien. Therefore, defendant asserts that the permanent injunction requested by plaintiff should not issue.

█ Upon thorough consideration, the Court is of the opinion that Lomas' motion for summary judgment must be granted. The parties disagree as to whether the National deed of trust was misindexed. The Court is of the opinion that it is not necessary to decide whether that deed of

trust was misindexed. The parties do not dispute that the National deed of trust was taken to the clerk's office and presented for recordation. Recordation of an instrument constitutes constructive notice of the instrument to all subsequent purchasers and mortgagees. § 55–96, Code of Virginia; *Faison v. Union Camp Corp.*, 224 Va. 54, 294 S.E.2d 821 (1982); *Jones v. Folks*, 149 Va. 140, 140 S.E. 126 (1927). Once an instrument is delivered to the clerk for recording, the party delivering the instrument is not responsible for seeing that the instrument is properly indexed. "Where a deed of trust [is] delivered to the clerk and duly admitted to record, the failure of the clerk to index it does not affect its validity as notice to subsequent purchasers." *Jones*, 149 Va. at 144, 140 S.E. 126. Thus, whether or not the deed of trust was properly indexed, the mere fact that it was presented to the clerk for recordation results in it being constructive notice to a subsequent mortgagee such as FmHA.

 Given that National's deed of trust provided constructive notice to all subsequent purchasers and mortgagees, it follows that the National deed of trust has priority over either of FmHA's deeds of trust. The rule in Virginia regarding priority among deeds of trust concerning the same property is first in time, first in right. § 55–96, Code of Virginia. The parties do not dispute that National's deed of trust was recorded well before either of FmHA's deeds of trust. The National deed of trust thus has priority.

 The Court is further of the opinion that no equitable defenses exist which would prevent Lomas from foreclosing on the property. Plaintiff asserts that the doctrine of laches bars Lomas from foreclosing on the property. However, § 8.01–241, Code of Virginia, provides for a 20 year statute of limitations for enforcement of a deed of trust lien. That period of time has not yet expired in this case. It is axiomatic that equity follows the law. Where a legal demand is asserted in equity which is not barred at law by the applicable statute of limitations, neither is it barred in equity. *Hagan Estates, Inc. v. New York*

*Mining and Manufacturing Co., Inc.*, 184 Va. 1064, 37 S.E.2d 75 (1946). Given that the statute of limitation for enforcing a deed of trust lien is 20 years, the doctrine of laches will not bar the enforcement of a deed of trust prior to the expiration of the time period.

 Plaintiff also asserts that the doctrines of estoppel and unclean hands prevent Lomas from foreclosing on the property. While the basis of plaintiff's assertion is not entirely clear from the pleadings, it appears that it is based on Thomas Poff's statement, at the time of the Chrisleys' closing, that no other deeds of trust existed except for the Virginia National Bank deed of trust. At the time the statement was made, the National deed of trust was in existence. Even assuming that Mr. Poff's statement was deliberately fraudulent, it does not follow that National or its successor in interest Lomas should be held responsible for the statement. Plaintiff has produced no evidence demonstrating that National encouraged fraud or even that it was aware of it. Thus, there is no evidence regarding any unclean hands on the part of Lomas which would bar it from foreclosing on the property.

For the foregoing reasons, Lomas' motion for summary judgment must be granted. As stated above, the preliminary injunction previously entered by the Court has dissolved under its terms. Lomas has requested a hearing to determine the costs and damages incurred by it due to this action. The parties are directed to schedule such a hearing at their convenience.